IN THE UNITED STATES BANKRUTPCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE : CHRISTIAN SCHOOLS, INC : Case No: 09-02324
D.B.A. TRINITY CHRISITIAN SCHOOL
: Chapter 11
Debtor
: Judge Flatley

MOTION OF FIFTH THIRD BANK TO PROHIBIT USE OF CASH COLLATERAL FOR REASON OF DEFAULT BY CHRISTIAN SCHOOLS, INC. OR IN THE ALTERNATIVE ORDER DEBTOR TO EMPLOY A BROKER TO LIST THE PROPERTY OF THE DEBTOR FOR SALE

**MOTION**

Fifth Third Bank("Bank"), through counsel, moves the Court to declare Christian Schools, Inc., Debtor and Debtor in Possession ("Debtor") in violation of the Second Interim Cash Collateral Agreement entered February 11, 2010 ("Order") for reason that despite repeated demands made to the Debtor to employ a broker to list the Debtor property for sale as provided for in such Order, Debtor continues to delay in honoring the commitment to do so. Bank requests the Court to prohibit further use of cash collateral by Debtor or in the alternative require the Debtor to employ a broker or permit Fifth Third Bank to employ a broker to list the Debtor's property for sale.

STATMAN, HARRIS & EYRICH LLC

/s/ Thomas R. Noland
Thomas R. Noland (0018239)
1 South Main Street, Suite 900
Dayton, OH 45402
937-222-1090
937-222-1046 fax
notices@statmanharris.com
Counsel for Fifth Third Bank

/s/James W. Martin, Jr.
James W. Martin, Jr., Esq.
Siegrist & White PLLC
P. O. Drawer 2550
Clarksburg, WV 26302
(304) 624-6391
martinbk@westvirginia.net
Counsel for Fifth Third Bank

MEMORANDUM IN SUPPORT OF MOTION

1. The Debtor and the Bank negotiated the first interim order which provided adequate protection payments.

2. The Bank had obtained an appraisal done of the Debtor property, after reviewing the financial information as to the school's operations, both pre-petition ad post-petition. The appraisal was completed and delivered to the Bank on January 15, 2010. A copy of the appraisal is attached as Exhibit "A". The appraisal found the Building and land to have a fair market value of 8.9 million dollars.

3. In order to extend cash collateral use beyond the term of the first interim order, the Bank and the Debtor reached agreement at paragraph 3 in the Order entered February 11, 2010, that further extension to permit use of cash collateral was conditioned on the Debtor employing a broker to list the Debtor property for sale should the Bank so request.

4. The attempts to have the Debtor obtain a broker was first raised on January 27, 2010, while the Order was still being drafted. Despite such request to the Debtor to recommend brokers, as of 2-18-2010 no response was made and a second request was made to counsel for the Debtor. The response was Mr. Shuman was leaving for 5 or 6 days as Mr. Shuman indicated a Perry Petroplus was the only qualified broker in the Morgantown area.

5. Without taking action on the broker the Debtor filed a motion on March 1, 2010 to determine the secured and unsecured claim of the Bank.

6. On March 3 the Bank demanded the Debtor comply with paragraph 3 of the Order was and immediately employ a broker indicating the Bank felt Mr. Castle of The Phoenix Group was also a qualified broker in Morgantown as well as Perry Petroplus and the Debtor should interview them and move to enter into a listing agreement by March 15, 2010.

7. On March 4, Mr. Shuman advised the Board was going to talk to Mr. Castle and Mr. Petroplus declined to be interviewed.

8. On 3-15-2010, Mr. Wiley indicated the Debtor would proceed with pursuing a listing agreement with Mr. Castle and a draft was circulated.

9. Since that time Mr. Castle has been unable to reach terms for the listing agreement that would pay him a commission should he find a buyer at a price above 3.5 million where the Debtor would elect to match the price of the offer to pay that amount to the Bank which would be indicative of the secured amount of the claim of the Bank.

10. On March 19, 2010 the Debtor was notified of this concern on the part of the broker and the Bank that would chill the brokers efforts to find a buyer. The broker had become aware of a potential buyer in Morgantown and was ready to propose a deal to the Buyer if he were engaged.

11. The response of the Debtor was the broker would be paid $1,500 in expenses if he found a buyer over 3.5 million and the school decided to match the offer.

12. Counsel called Mr. Shuman on March 19, 2010 re this $1,500 expense offer and Mr. Shuman said he would speak to the broker to negotiate on this issue. The broker was notified the same day that he should speak with Mr. Shuman on this issue.

13. On March 21, 2010 the broker indicated he felt that the Debtor would not properly compensate him and asked the Bank become involved in the listing agreement to protect him should he bring in an offer above the 3.5 million that the Debtor would match.

14. On March 23, 2010, counsel for the Bank contacted counsel for the Debtor and proposed the Bank be permitted to be a party to the listing agreement to provide protection for the commission of the broker based on full disclosure to the Court.

15. No response was forthcoming from the Debtor or counsel and on March 25, 2010, Bank's local counsel was asked to assist in preparing the filing of a motion to employ the broker as we did not hear from the Debtor.

16. Later the afternoon of March 25, 2010, a call was received from Mr. Shuman indicating the Debtor would agree to the Bank being on the listing agreement should the Bank compensate the Broker if the Debtor matched an offer price over $3.5 million.

17. On April 5, 2010, no filings to employ the Broker had been made and notice was given this Motion was to be filed as the Debtor has defaulted on the Order.

18. The best way to determine value of the land and building is what a willing arm's length buyer is willing to pay. The means to try to arrive at such a valuation is to put the land and building on the market.

19. The disparity between Debtor's appraisal at 3.25 million and the Bank's at 8.9 million can best be reconciled through the listing process. If no buyer can be located, then the Court can determine the value in accordance with the Section 506 motion.

20. The Bank recognizes the sensitivity of the Board to the interests of the parents and community as to the students; nevertheless, a 9 million dollar facility was built and financed

with bonds which Debtor defaulted upon and which the Bank had to pay pursuant to the line of credit.

21. The Bank is entitled to have the best efforts employed to obtain the best price possible on the land and buildings.

22. Wherefore, the Bank respectfully requests the Court enter an order wither requiring the Debtor to list the land and buildings with The Phoenix Group for which a 4% commission on the gross sale price would be paid if a sale and closing occurs and allow the Bank to provide a 4 % commission to The Phoenix Group should an offer of over 3.5 million be obtained which the Debtor is able to match to pay such funds to the Bank without requiring the sale of the land and buildings. If the Debtor continues to delay such listing, the Bank requests the Court to enter an order denying Debtor further use of cash collateral.

STATMAN, HARRIS & EYRICH LLC

/s/ Thomas R. Noland
Thomas R. Noland (0018239)
1 South Main Street, Suite 900
Dayton, OH 45402
937-222-1090
937-222-1046 fax
notices@statmanharris.com
Counsel for Fifth Third Bank

/s/James W. Martin, Jr.
James W. Martin, Jr., Esq.
Siegrist & White PLLC
P. O. Drawer 2550
Clarksburg, WV 26302
(304) 624-6391
martinbk@westvirginia.net
Counsel for Fifth Third Bank

## Certificate of Service

The undersigned herein certifies that a copy of this Motion Of Fifth Third Bank To Prohibit Use Of Cash Collateral For Reason Of Default By Christian Schools, Inc. Or In The Alternative Order Debtor To Employ A Broker To List The Property Of The Debtor For Sale was served through the bankruptcy electronic notification system or via ordinary U.S. mail on this ____ day of April 2010 upon the following creditor or parties in interest set forth in the attached Service List.

/s/ James W. Martin, Jr.
James W. Martin, Jr.

Subj: **Hospital Visit 02/11/2010 to02/26/2010**
Date: 4/6/2010 2:28:21 P.M. Eastern Daylight Time
From: carolelechiara@ymail.com
To: smiley49@aol.com

Mr. Martin,

This bill is for the time you were in the ICU unit at United Hospital Center. Dr Tariq was the doctor that took care of you during your time in ICU. Anymore questions feel free to call 304-842-5864.

Thank You

Case 1:09-bk-02324    Doc 108    Filed 04/08/10    Entered 04/08/10 14:26:36    Desc Main
Document    Page 7 of 7